UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TING KRAY; SAMAUN SRIP; and SAP KRAY,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF TACOMA; TACOMA POLICE DEPARTMENT; PHILIP ARREOLA; and JOHN DOE NOS. 1-25,<br><br>Defendants. | CASE NO. C97-5582 KLS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

The Defendants filed this motion for summary judgment regarding the applicability of the *Heck* preclusion doctrine. ECF No. 100. The issue before the court is whether Sap Kray's conviction for aggravated first degree murder of Tacoma Police Officer William Lowry precludes certain civil claims of Sap Kray and Ting Kray[1].

---

[1] The Court notes that Samaun Srip did not respond to the Court, as directed (ECF No. 66) and it appears, therefore, that she no longer wishes to be a part of this litigation. For purposes of a complete record, however, the Court requests the Defendants to file a motion to dismiss as referenced in fn. 3 of their Motion. ECF No. 100, p. 5.

Order Granting Defendants' Motion
for Summary Judgment        - 1

In addition, the Defendants moved to dismiss Ting Kray's claims asserted under the Takings Clause of the Fifth Amendment. Ting Kray agrees this claim should be dismissed and that is this Court's order.

The Plaintiffs assert, in their opposition to the Defendants' motion, that the following claims survive the *Heck* analysis: (1) Sap Kray's claim of excessive force related to the Defendants' use of the ARWEN· (Anti-Riot Weapon Enfield); (2) Sap Kray's claim that his Fourth Amendment rights were violated when he was unlawfully arrested in his home without a warrant; and (3) Ting Kray's Fourth Amendment claim arising from the warrantless seizure of the house he leased and had previously occupied.

## FACTS OF THE CASE

**Conviction.** On March 11, 1999, Sap Kray was convicted by a jury of aggravated Murder in the First Degree of Officer Lowry. The jury found that the State had proven the existence of the following aggravating circumstance beyond a reasonable doubt: "The victim William F. Lowry, was a law enforcement officer who was performing his official duties at the time of the act resulting in death and William F. Lowry was known or reasonably should have been known by the defendant to be such at the time of the killing." ECF No. 103-5, p. 4, Special Verdict form. Mr. Kray was also convicted by the same jury of assault in the second degree against his ex-wife, Samaun Srip.

Sap Kray's conviction was affirmed by the Court of Appeals, Washington Supreme Court, his federal habeas claim was denied and review has been denied by the Supreme Court.

**Facts of the Case as Determined by the Court of Appeals[2].** The facts of this case are quite detailed and set forth fully in the Court of Appeals Decision. However, all the events which lead to the shooting death of Officer Lowry and the wounding of Sap Kray need not be repeated here for purposes of the Defendants' motion.

In summary, Sap Kray assaulted Samaun Srip, his ex-wife, with a rifle on August 27, 1997. Following the assault she drove to her job at Emerald Downs. Sap Kray drove to Emerald Downs twice to speak with Samaun Srip. The second time he was at Emerald Downs the Auburn Police were called. The Auburn Police officers at the scene "thought they heard Kray load (FN3) his gun. Kray said to the police, (1) 'You want to kill me, don't you?' Report of Proceedings (RP) at 505; (2) that his life was not worth anything; and (3) that he did not care if he died that night. Kray then raised his rifle. Police immediately ordered Kray to put the weapon down. Kray complied." *Kray* at p. 1. (FN3: Police based this belief on the sound of a pump action shotgun being loaded or 'racked.').

The Auburn Police allowed Kray to leave Emerald Downs at about 1:05 a.m. However, Auburn Police Sergeant Riley "asked dispatch to advise the state patrol and bordering agencies about the confrontation, including 'that there may be a weapon in the vehicle; that [Kray] could possibly be intoxicated; [and] that he was angry.' RP at 869. The Auburn Police issued an ACB (all-call broadcast) "(1) informing police that Kray posed a safety risk for police officers; (2) identifying Kray's van by type and license number; (3) noting that there was an armed, Asian male inside; and (4) listing 1026 East 57th, Tacoma (Srip's residence), as Kray's possible destination." *Id.* At p. 2.

---

[2] For purposes of this motion, the parties agree that reliance on the findings of the Court of Appeals unpublished decision is appropriate. The Washington Appeals Court Division II unpublished decision of *State v. Kray* is found at 114 Wash.App. 1052, 202 WL 31732682 (2002). Citations to this case will be to the West Law pagination. A complete copy of the case is filed at ECF No. 104-1.

Subsequent to this ACB, the Tacoma Police became involved. After interviewing Samaun Srip, both over the phone and at the police station, a decision was made to arrest Kray for the assault against Srip. *Id.* at p. 2. A sergeant suggested using a Special Weapons and Tactics team (SWAT) "because of the 'situation,' including the report that Kray had an AK-47." *Id.* at p. 2.

At 9:30 a.m. on August 28th, Kray left Srip's house with his son Veasna and another Asian male. "Officer Lowry said, 'Police,' told the men to put their hands in the air, and began moving toward them." *Id.* at p. 3. Veasna and the other man complied with the police directive. Kray, on the other hand, walked back to the residence. In response, Office Lowry again "identified himself as a police officer, and commanded Kray to put his hands in the air. Kray turned around, looked at Lowry, gestured for him to go away, continued toward the house, and then ran inside. Initially, Officers White and Lowry ran after Kray. But when Kray entered the house, the officers stopped their pursuit and took cover." *Id.* at p. 3.

Officer Lowry then spoke with Kray through the front door screen for about 10 minutes. On one occasion Kray came onto the porch but then stepped back inside the house. He did not leave the house again but did continue to talk with Officer Lowry. "Several times during this conversation, Kray became agitated, stepped away from the door, disappeared for a short time, and then reappeared." *Id.* The Court of Appeals noted that during this time Kray did not display a weapon but also that the police had been advised that Kray was armed with an AK-47.

Officer Lowry continued his efforts to convince Kray to come outside but Kray did not comply. Instead, he demanded that Srip be brought to the front of the house. Lowry told him that Kray could see Srip after he surrendered to the police.

Ting Kray, Sap Kray's brother, learned of police presence at Srip's residence. He tried to call Kray but the police had disconnected the telephone. He then went to the residence but the

1  police refused to let him enter and instead directed him to the nearby police 'command post.' *Id.*
2  at p. 2.
3        At 9:41 a.m. Officers Habib and Nasworthy radioed the command post that they were
4  going to use an ARWEN® to subdue Kray. "ARWEN® stands for 'Anti-Riot Weapon Enfield.'
5  It is a 'blunt trauma' gun that shoots high-powered rubber bullets. The ARWEN® bullets the
6  police shot at Kray were 40 mm in diameter, traveled 300-360 feet per second, and delivered 153
7  foot pounds of energy. One officer compared being hit by an ARWEN® to having 'a
8  professional boxer hit you very hard when you weren't expecting it.' RP at 3470. The
9  ARWEN® is used as 'pain compliance,' so a subject will surrender rather than continue to
10 threaten harm to police or others." *Id.* at p. 3. If the ARWEN® is used properly, it is a 'non-
11 lethal' weapon "which incapacitates an individual long enough for police to take him into
12 custody." *Id.* at p. 3.
13       Officer Nasworthy twice fired the ARWEN® at Kray, striking him between the chest and
14 abdomen. "The entry team then rushed to the front door, expecting to find Kray down and to
15 take him into custody. Lowry entered first, followed by Officers Peck, Standifer, and White.
16 Lowery and White repeatedly said, 'Police, get down.' RP at 2817. But Kray had disappeared.
17 Kray reached behind a door, grabbed an assault rifle, and reappeared." *Id.* at p. 3. Kray fired his
18 assault rifle once. That bullet is what caused Officer Lowry's death. Officers in the house and
19 outside also fired their weapons. In fact, the police officers outside continued to fire into the
20 house until Officer Lowry and the other members of the entry team were moved to a safe area
21 outside the house.
22       After the shooting, Pierce County SWAT officers replaced the Tacoma SWAT officers.
23 Sap Kray had been shot in the gunfire and crawled out of the house, was placed under arrest and
24 taken to the hospital. Sap Kray is now paralyzed from the waist down.

Order Granting Defendants' Motion
for Summary Judgment                - 5

1   This civil claim was filed on September 17, 1997 and was stayed until such time as the
2   criminal trial and all subsequent appeals had been resolved.

3   **Criminal Trial of Sap Kray.** The defense theory at trial was that Kray shot Officer
4   Lowry in self defense. The Court instructed the jury on justifiable homicide (self-defense),
5   Instruction No. 25. ECF No. 103-4, p. 29. The court also gave an initial aggressor instruction
6   (Instruction No. 30A, ECF No. 103-4, p. 35). This instruction was given over the objection of
7   defense counsel.

8   On appeal, Kray asserted trial court error for giving the initial aggressor instruction to the
9   jury. The Court of Appeals held that under the circumstances of the case, Kray was not entitled
10  to a self-defense instruction. "Kray's own actions necessitated the Tacoma Police SWAT team's
11  attempted entry of Srip's home, both to arrest him for assaulting Srip and to remove him from
12  her home; and it was this **lawful, attempted entry** by the police that Kray argues justified his
13  use of deadly force in 'self-defense.'" *Id.* at p. 5 (emphasis added). The Court went on to find
14  that Kray was not entitled to resist "because (1) the police used force that, while deadly, was
15  lawful and not excessive under the circumstances, and (2) Kray created the need for the police to
16  use deadly force." *Id.*

17  Under Washington law, an "officer making a lawful arrest may use any force reasonably
18  necessary to 'secure and detain the offender, overcome his resistance, prevent his escape, and
19  secure him if he escapes.' *Smith v. Drew*, 175 Wash. 11, 18, 26 P.2d 1040 (1933)." *Id.* The law
20  also permits police officers, "when necessary" to use deadly force. RCW 9A.10.040. Under the
21  facts of this case, the Court of Appeals found that the officers were authorized to use deadly
22  force in making a lawful arrest of Sap Kray. In support of its conclusion that use of deadly force
23  was appropriate to effectuate the arrest the Court noted as follows:
24      The Tacoma Police investigated Kray's domestic violence rifle-assault

against his estranged wife and planned to arrest him. Kray had (1) threatened Srip with a rifle outside her home, (2) followed her to her place of work, (3) left and returned again, at which point he displayed an apparently loaded rifle to police, (4) drove to Srip's home and entered it, (5) refused to cooperate with the police's request to surrender outside Srip's house, (6) reentered her house, and (7) refused to leave after repeated patient, nonconfrontational requests by Officer Lowry. Meanwhile, Kray had become more agitated.

*Id.* at p. 6.

The court also noted that the police "attempts to negotiate with Kray and to subdue him using nonlethal force, the ARWEN® had failed. When the entry team rushed the front door, they expected to find him subdued and to handcuff him. But this was not the case. . . . Under these circumstances, where officer and suspect are facing each other with firearms, the officer is not required to wait for the suspect to fire first, further imperiling the officer. Accordingly, we conclude that the SWAT team did not use excessive force by shooting at Kray, regardless of who fired first." *Id.*

As a factual basis for its legal conclusion that Kray was not entitled to a self-defense instruction, the Court of Appeals noted that "police employed deadly force only after exhausting sequential, nondeadly, though increasingly forceful means to arrest Kray. . . . Finally, not even the nonlethal ARWEN had successfully subdued Kray long enough for the police to handcuff him. Instead, he reached back into the doorway and produced the assault rifle." *Id.* at p. 7. "Here, the police's use of deadly force against Kray was lawful and not excessive, and Kray had no right to resist the arrest by any means." *Id.* at p. 8.

## THE LAW – *HECK* BAR

The Defendants' motion is based on what has become known as the *"Heck* preclusion doctrine" or the *"Heck* bar." This is based on the following paragraph in the Supreme Court's opinion:

We hold that, in order to recover damages for allegedly unconstitutional

1   conviction or imprisonment, or for other harm caused by actions whose
    unlawfulness would render a conviction or sentence invalid, a § 1983
2   plaintiff must prove that the conviction or sentence has been reversed on
    direct appeal, expunged by executive order, declared invalid by a state
3   tribunal authorized to make such determination, or called into question by a
    federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim
4   for damages bearing that relationship to a conviction or sentence that has *not*
    been so invalidated is not cognizable under § 1983. Thus, when a state
5   prisoner seeks damages in a § 1983 suit, the district court must consider
    whether a judgment in favor of the plaintiff would necessarily imply the
6   invalidity of his conviction or sentence; if it would, the complaint must be
    dismissed unless the plaintiff can demonstrate that the conviction or sentence
7   has already been invalidated. But if the district court determines that the
    plaintiff's action, even if successful, will *not* demonstrate the invalidity of any
8   outstanding criminal judgment against the plaintiff, the action should be allowed
    to proceed, in the absence of some other bar to the suit.
9

10  512 U.S. at 486-87, 114 S. Ct. 2364 (footnotes omitted).

11      If a criminal conviction arising out of the same facts stands and is fundamentally

12  inconsistent with the unlawful behavior for which § 1983 damages are sought, then the § 1983

13  action must be dismissed. *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005).

14              **DISCUSSION - SAP KRAY'S EXCESSIVE FORCE CLAIM**

15      Sap Kray asserts that the Defendants used excessive force when Officer Nasworthy shot

16  him with the ARWEN®. This Court finds, however, that *Heck* is a bar to this claim of excessive

17  force.

18      It is clear from the facts as found by the Court of Appeals, that the use of the ARWEN®

19  was part and parcel of the entry team's "lawful, attempted entry". The Court of Appeals noted,

20  several times, the efforts of the officers, and in particular Officer Lowry, to convince Sap Kray to

21  come out of the house and surrender. He clearly refused to do so and during the course of the

22  conversation was becoming more agitated. The officers then made the decision to use the

23  ARWEN®, the purpose of which was to subdue Sap Kray so the officers could take him into

24  custody. Unfortunately, the ARWEN® did not accomplish that intended result. But, as soon as

Order Granting Defendants' Motion
for Summary Judgment          - 8

the ARWEN® was fired the entry team went into the house. The shooting of the ARWEN® clearly facilitated the "lawful, attempted entry" as the officers made the entry expecting to find Sap Kray incapacitated. The shooting of the ARWEN® was the initiator of the lawful attempted entry and was so closely connected in time to actual entry into the house by the police officers that it cannot be considered a separate incident. A finding that use of the ARWEN® against Sap Kray was the use of excessive force would be contrary to the Court of Appeals determination that the attempted entry was lawful. This claim cannot withstand the *Heck* bar and must be dismissed.

## SAP KRAY'S FOURTH AMENDMENT RIGHT CLAIM

Sap Kray's claims under the Fourth Amendment were initially set forth in his Complaint. He asserted that his home was seized when it was surrounded by officers and that such seizure was "effected without a warrant, by unreasonable force, and without probable cause." Complaint at paragraph 3.2 and 3.3. However, based on his memorandum opposing this summary judgment motion (ECF No. 105), it appears this claim has now narrowed to the assertion that Sap Kray's arrest was unlawful because it was a warrantless arrest. This is based on the assertion that Sap Kray was "arrested", without a warrant, through the "combination of officer commands and the disabling force of the ARWEN" (ECF No. 105, p. 12), all of which occurred prior to the shooting of Officer Lowry.

## DISCUSSION – SAP KRAY'S FOURTH AMENDMENT CLAIM[3]

As discussed above, the Court of Appeals found that the warrantless entry into the house was a "lawful, attempted entry." The use of the ARWEN® was an inherent, integral part of the

---

[3] The Court notes that the parties disagree factually as to whether Sap Kray or Ting Kray may assert a property right in the home where this event occurred. This factual dispute does not need to be resolved by the Court in order to address the *Heck* bar issues.

1  lawful attempted entry and therefore did not constitute the use of excessive force. This same
2  reasoning prevents Sap Kray from pursuing a claim that his warrantless arrest was unlawful, as
3  such a finding would be fundamentally inconsistent with the factual findings of the Court of
4  Appeals as it relates to the use of the ARWEN®. Sap Kray would have to prove that the
5  officers made a warrantless arrest of him, in his home, and that such warrantless arrest was
6  unlawful. This clearly contradicts the factual findings and legal conclusions of the Court of
7  Appeals that the attempted entry into Sap Kray's house was lawful. *Heck* bars this claim.
8         While Sap Kray alleged an unlawful, warrantless arrest by the **combination** of officer
9  commands and use of the ARWEN®, he also cited to cases in support of his assertion that the
10 arrest/seizure occurred while Sap Kray was in his home and the officers had it surrounded. This
11 suggests to the Court that he is also claiming an unlawful, warrantless arrest based solely on the
12 fact that the house he was in was surrounded by police and therefore he was seized without a
13 warrant.
14         However, the Court of Appeals found that the officers had probable cause to arrest Sap
15 Kray. They had probable cause to believe Kray committed a felony (assault of Srip, for which
16 Sap Kray was subsequently convicted) and the Court of Appeals, by its language, consistently
17 approved of the planned arrest of Sap Kray. This conclusion necessarily means the officers had
18 the legal right to be on the property. The fact that there was no warrant is not sufficient to
19 overcome the legal conclusion of the Court of Appeals that there was probable cause to make a
20 legal arrest.
21         This Court concludes that Sap Kray's Fourth Amendment claims must be dismissed
22 pursuant to *Heck.*
23
24

## TING KRAY'S FOURTH AMENDMENT CLAIMS

Ting Kray's Fourth Amendment claim is based on his assertion that the house was unlawfully seized, without a warrant, without probable and through the use of unreasonable force by officers of the City of Tacoma. This was done when his home was surrounded with armed officers, telephone lines were cut and he was prevented from entering the home or communicating with anyone inside the home. Complaint, paragraph 3.2, 3.3 and 3.4. While the Defendants assert that cutting telephone lines and preventing Ting Kray from entering the house during the standoff do not rise to the level of Constitutional violations, that issue is not before the Court. Rather, the issue is whether this claim survives the *Heck* analysis.

Ting Kray does concede that "under controlling authority, Sap's conviction can act to bar Ting's claims where such claims would necessarily imply that Sap's conviction is invalid." ECF No. 106, p. 9. He argues, however, that the seizure of the house does not implicate Sap's conviction and therefore should be permitted to proceed.

The Court notes that Ting Kray asserts seizure of his person by Tacoma police officers. This claim is not part of the Defendants' motion.

## DISCUSSION – TING KRAY'S FOURTH AMENDMENT CLAIM

Ting Kray's claim presents the issue of whether the *Heck* bar applies to Ting Kray, Sap Kray's brother, who was not charged or convicted of any crime. Ting's claims rest, however, on a determination that seizure of the house was unlawful which is contrary to the finding of the Court of Appeals that the seizure of the house was lawful.

Whether this finding can bar Ting's claim has been addressed recently in the case of *Beets v. County of Los Angeles*, 669 F.3d 1038 (9th Cir. 2012). A question raised in *Beets* was "whether the *Heck* bar extends to the plaintiffs in this case who were not tried or convicted." *Id.* at p. 1045. In *Beets*, if the remaining plaintiffs were to recover in their § 1983 action, they would

1 be required to prove facts (that a deputy used excessive force) that were "fundamentally
2 inconsistent" with a criminal conviction of a non-party (in which a finding was made that the
3 deputy did not use excessive force). The Court concluded that the claim was precluded by the
4 *Heck* bar.

5 The reasoning of the Court in *Beets* is clearly applicable to Ting Kray's Fourth
6 Amendment claim as it relates to the seizure of the house, as is acknowledged by Ting Kray.
7 The Court of Appeals determined that the police officers had probable cause to arrest Sap Kray
8 for the assault on Samaun Srip and therefore they had lawful authority to arrest Sap Kray. In
9 order for Ting Kray to prevail in this civil litigation he would have to prove that there was no
10 probable cause to arrest Sap Kray and therefore such seizure was unlawful. If he were
11 successful, that finding would undermine and be fundamentally inconsistent with the facts which
12 support Sap Kray's conviction. As noted by Ting Kray's counsel, this Court is bound to follow
13 *Beets* as binding precedent and the undersigned agrees.

14 This Court therefore concludes that Ting Kray's Fourth Amendment claim as it relates to
15 the seizure of the house is barred by *Heck*.

16 **CONCLUSION**

17 For the reasons discussed above, the Court hereby **GRANTS** the Defendants' motion to
18 dismiss all of Sap Kray's Fourth Amendment claims, Ting Kray's Fourth Amendment claim as it
19 relates to the house only and Ting Kray's Fifth Amendment claim.

20 Dated this 7th day of June, 2012.

Karen L. Strombom
United States Magistrate Judge